will now move to the next argument on for today. That's Rubio v. Barr. Let me make sure counsel is here. Ms. Cardona? Good morning. Okay, good morning. And you can see and hear me and the other panelists? Yes, sir. Yes, your honor. Great. And Ms. Frayer? Good morning, your honor. And you can see and hear the panelists okay? Yes, your honor. Good. All right. So we've got 10 minutes aside, but Ms. Cardona has reserved three minutes for rebuttal. So Ms. Cardona, the floor is yours. Go ahead. Good morning, your honors. May it please the court. Mirna Cardona for the petitioner Carlos Nahum, Rubio v. Rubio. Today, we ask this court to consider the case of Carlos Rubio, a man who Barrio 18 is targeting for death because of his rival gang. The authorities will not protect Mr. Rubio from this likely fate, in part, because Tito is in jail for a crime that involved the killing of a police officer, and because of rampant corruption within the Salvadoran government. Yet, the Board of Immigration Appeals affirmed the immigration judges denial of Mr. Rubio's claims for relief of withholding of removal and relief under the Convention Against Torture or CAP. The BIA's decision was predicated on multiple legal errors. We will first explore the BIA's two errors in concluding that the petitioner failed to establish the nexus element for withholding. These errors are first, the BIA's misapplication of the One Central Reason standard, and second, its prejudicial omission and mischaracterization of material evidence of Barrio 18's motives for targeting Mr. Rubio. I will take each in turn. First, the agency failed to apply the One Central Reason standard and instead used an improper either-or approach to the nexus requirement. In this regard, the agency did not consider that a persecutor may have multiple motives for targeting its victim, and that nexus may be satisfied as long as a principal motive for the victim for the persecution is the victim's membership in a prison. Next, in its analysis of nexus, the BIA also overlooked material evidence coming from Barrio 18's own words that their motive for targeting Mr. Rubio was his relationship to Tito. The evidence the court failed to consider included, for example, a threat to disappear Carlos in order to punish Tito, and a threat to chop up Carlos into pieces and film it to show the dog of his brother Tito in jail. This cherry-picking of convenient evidence failed to meet the minimum level of fact that the BIA's flawed analysis with respect to nexus denied Mr. Rubio of the relief from the threat of being killed. We ask that you vacate and remand on this issue of nexus. The BIA also concluded that Mr. Rubio did not establish a cognizable particular social group, but that conclusion is tainted in two ways. First, the BIA conducted impermissible fact-finding in not socially distinct under the new and more stringent legal standard established by the Attorney General's 2019 opinion in matter of LEA or LEA-2. And second, the retroactive application of LEA-2 violated Mr. Rubio's right to due process because it deprived him of the opportunity to present additional evidence to meet such new standard. The government's silence with respect to these errors speaks volumes. Each of these prejudicial errors warrants remand. I will now- Counsel, may I ask you this? I mean, these proceedings took place after Mr. Rubio re-entered, illegally re-entered the United States. So presumably he was already returned once to El Salvador. What is the evidence that he was persecuted when he was there before he re-entered? Your Honor, the evidence that he was persecuted includes the evidence of the death threats. And in prior cases, such as Manzur versus the U.S. Department of Homeland Security, death threats and other forms of non-physical torture, or I'm sorry, non-physical threats are considered persecution. But they're certainly not considered torture. They're not considered torture, but my apologies for mentioning torture. We're speaking about the withholding of removal claim that- But if we were talking only about the Convention Against Torture claim, you would concede that when he was returned last time, before he illegally re-entered this time, he was not tortured. Your Honor, I would concede that he was not tortured, but that's not a requirement under the CFR. The CFR does provide in Section 1208.16b.1.2 that if the harm or the possibility of future torture is unrelated to past persecution, that's why we're in the burden of more likely than not that Mr. Rubio would suffer such harm. And here, if I can turn to the errors under the CAT claim- Yeah, well, what's the difference in circumstance now as opposed to when he went back to El Salvador last time? Well, now- In other words, why is it more likely that he'll be tortured now and he is, in fact, there? But I mean, that's not in- whatever has happened subsequent is not in the record. But what is the evidence that he's more likely to be tortured if returned now than last time? Well, the evidence that he would be more likely to be tortured now is that there are- And that was not in effect the last time that Mr. Rubio was returned to El Salvador. So now he'll be more highlighted for extrajudicial killings. And that's only one piece of evidence. There's also the continuing threat of Barrio 18's animus toward Mr.  The court failed to consider various evidence of the possibility of torture, and that's legal error because the CFR and this court's precedent requires that the court consider this evidence. I see my time is up, Your Honours. So, Ms. Cardona, you've got three minutes of rebuttal. We'll now hear from Ms. Frayer for the respondent for 10 minutes. Good morning, Your Honours, and may it please the court. Alison Frayer for the Attorney General. In this case, the record does not compel the conclusion that Mr. Rubio established that his family membership would be at least one central reason for his past mistreatment or for any mistreatment he fears in the future, nor does it establish that the Salvadoran government would consent or acquiesce to his torture, as those terms have been interpreted by this court and the board. And so the petition for review should be denied. First, with respect to the withholding of removal claim, Mr. Rubio testified that he did not know the nature of his brother's dispute with Barrio 18. He said that the Barrio 18 members told him that he needed to pay his brother's debts and he did not know anything about what that debt was or what it could be. He didn't like to talk about it. He didn't like to ask his brother about it. So he didn't know, Mr. Why would that make any difference? Because before the board on this court, Mr. Rubio claims through counsel that the debt was not financial, that it was some sort of symbolic debt that he owed them. And Mr. Rubio's testimony doesn't compel that conclusion. It's certainly one possible reading of the situation, but the record doesn't compel that conclusion. And because it's a factual finding, that's the standard of review he needs to meet in order to prevail. Your adversary's first argument was that the immigration judge failed to consider mixed motive. It looks as though that is so. What do you say in response? I disagree that the IJ failed to do a mixed motives analysis. The IJ noted that the that Mr. Rubio's mother and sister were not harmed on account of their family relationship, which which demonstrates that she understood that the family motive and the pecuniary motive were both at issue. She also found that Mr. Rubio's relationship to his brother Tito was incidental, which is one of the words in matter of JBN in describing the requisite mixed motives analysis in a case like this. So she is finding. You mean if it's incidental, then it's not it does not have to be considered in a mixed motive analysis. If it's incidental, that means the IJ has undertaken the analysis, considered the family motive as a possibility and said that it was not sufficiently central to meet the statutory language. I understand. Thank you. Similarly, on appeal, the board stated that this was, quote, fundamentally a criminal extortion case, which indicates that they were also considering that other motives may have been at play, including the family motive and deciding that they were not sufficiently central to Barrio 18's motivation and thus denying the claim. With respect to the cat claim, Mr. Rubio argues that he's established acquiescence, but nowhere in his briefs does he dispute the agency's determination that he did not show a clear probability of torture upon return the government briefs that issue, but there's nothing in the briefs on that issue from Mr. Rubio, even if the court were to overlook that, as Judge Jacobs pointed out, Mr. Rubio had been removed to El Salvador previously, and he experienced mistreatment, but nothing that rose to the level of torture and nothing that showed that the government was going to be interested in harming him. Petitioners cite... But excuse me, what is the evidence cited by the immigration judge to show that the government would, that the government authorities would protect him? Well, that's a little bit, the applicant needs to show that the government would acquiesce in his torture. So there's a burden here that that was not met. Exactly. Yes. And acquiescence is as a different standard than the unable or unwilling to protect standard that is relevant in the asylum and withholding context, as this court ruled in Scarlet just a couple of months ago. Those are different standards, and acquiescence is usually seen as higher, though this court didn't take a position on that. So the IJ doesn't cite specific evidence in the record. She discusses in the top part of her opinion, a lot of the evidence in the record, and she states that she considered all the evidence in the record in making the decision, whether she explicitly mentions it or not. But she does not cite any specific evidence in the analysis section. But she ruled that the, that Mr. Rubio had failed to meet his burden of showing acquiescence. And the record does not compel a contrary conclusion. OK, anything else, counsel? If the court has no more questions. Let me see from Judge Jacobs. No. All right. So, Ms. Cardona, you have three minutes of rebuttal, if you need that much. Thank you, Your Honors. I would like to respond to the assertion that the court held that the harm being related to Mr. Tito was incidental. We dispute that, and that such conclusion would be based on the legal error of omitting and mischaracterizing material evidence with respect to Barrio 18's motives. The court omitted and disregarded evidence coming from Barrio 18's own words, as I mentioned, and as well as evidence that the court considered credible from Professor Hallett, who explains exactly that this, the crux of this case is Mr. Rubio's relationship to his brother Tito. And that under Salvadoran cultural logic and gang logic, it makes sense that the Barrio 18's motivations were because of the relationship to a person with whom they had a score to settle. Further, the court also mischaracterized the claim here. We're speaking about the threats from Barrio 18. Barrio 18 never requested money in specific amounts, and in many instances, never mentioned money at all. The assertion that this is a claim of extortion is based on a misunderstanding and mischaracterization regarding incidents involving MS-13. With respect to acquiescence, the assertion that the petitioner didn't submit evidence with respect to the government's likely acquiescence is inaccurate, Your Honor, because the testimony of Professor Hallett also spoke about the likelihood of acquiescence. And there were numerous reports and articles that were omitted, which such omission and failure to consider the evidence of the likely threat of torture is contrary to the requirements of the CFR, which requires, it compels the court to consider contrary testimony. I point the court to pages, I believe it's 12 to 15 of our reply brief, where we, there is additional evidence of, I'm sorry, 19 to 20 of our reply brief, where we summarize the various reports that are omitted. And finally, the fact that the IJ mentioned that she considered the evidence doesn't make it so. So on both the nexus element and on this element, there's gross omission of evidence, which is an error of law in each case. Thank you, Your Honors. Thank you both. We will reserve decisions.